Good morning and may it please the court. Kimberly Seymour on behalf of Leopoldo Rivera-Valdez and I would like to reserve two minutes for rebuttal please. This case is about a basic and fundamental rule. When someone is at risk of being removed from this country, the government has to inform them when and where they'll have an opportunity to see the judge who is a critical and life-altering decision. And a controlling Supreme Court decision in Jones v. Flowers elaborates on what the government must do to notify someone of this critical proceeding. Counsel, let me interrupt you. If I agree with you that Jones applies here, what reasonable steps could the government have taken here to notify your client of the hearing date? It seems to me that they first mailed him through regular mail a copy of the order to show cause that he'd already signed and that was returned as undeliverable and that could not be forwarded to a new address. And then they did the certified mail, which was not picked up and then returned. So in light of that, what else could the government have done here to inform him of this hearing, given that apparently he took off to avoid receiving notice? So in terms of the steps that the government could take, regular mail is one, which Jones addresses. It's mail that would have been left at the residence instead of certified mail, which requires a signature, is left at the post office. We had regular mail here. In other words, we had regular mail. The order to show cause was mailed to him and then it was returned as undeliverable because he had left. What's the government supposed to do here? I mean, under you, if that had not been done before the certified letter was sent, then I could see the strength of your argument under Jones. But in view of the fact that this letter was sent and returned as undeliverable, what else could the government have done in this situation when your client took off to avoid going to this hearing? And they could have sent an additional regular mail that would have been left. The government could have checked rolls for an additional address. The Seventh Circuit in Peralta Cabrera could have checked, I'm sorry, could have checked what? Rolls or records to see if there's any other additional addresses. But here the government did nothing. And that's what Jones finds unacceptable, that the government must take additional steps. What rolls are you referring to? Excuse me? What rolls are you referring to? Or to check public records for an address. I see. Okay. But... But Jones rejected that. Jones said that the government wasn't required to go search the telephone directory to find the address of where this, of the owner of the property. So Jones rejects that. It seems to me Jones here, if it applies, says the government has to take reasonable steps. But there's, I don't see what the government could have done here. Well, Jones is very clear that if the government really intends to provide notice, it cannot do nothing when notice is returned unclaimed. And that's the problem here. The government did nothing. And so sending by regular mail, the Seventh Circuit suggested in Peralta Cabrera personal service when the individual was detained, because hearings are so often set when a person is detained. How could they give him personal service? He took off. They didn't know where he was. At the time that he appeared in the office, that was an opportunity to give him notice of a hearing. But this is the government. It's bureaucratic. The immigration judge sends out the notice. And this was the agency did the order to show cause. I mean, it was, I think it was Judge Posner's opinion in the Seventh Circuit that talked about this bureaucratic disconnect that makes no sense. But this is the government, right? Right? But, right, that's what they should have done. But your client took off. I mean, he wanted to, he fled. And I take issue with that. I think that's the government's characterization. But we, the question is not what were the individual's underlying motivations. It is not the burden on the client to, or the individual, to show what their motivations were or if they were avoiding notice. The question is, was notice reasonably calculated to reach the individual? And if the government receives information that their attempt to provide notice was unsuccessful, is there something reasonable to do? Can I ask this? As I understand, Jones, something that may be reasonably calculated, but once the government obtains knowledge that the notice was not affected, that's when the additional steps would be necessary. Does that, would the unclaimed mail in the original delivery have given that government the knowledge or is it the certified mail that was unclaimed itself the one that might trigger those additional steps? I think here it's significant that just days before the notice was sent, when a copy of the motion was sent to the address, to Mr. Rivera-Valdez, when that was returned, that certainly gave the government notice that something is wrong with this address or that Mr. Rivera-Valdez is not receiving mail there. But we don't know if he left at that point, right? I mean, it's just, it's, mail has been non-delivered. I don't know that there's anything in the record that suggests that he fled town, that we know one way or the other about that. It's when the mail was unclaimed, as in Jones, when the government starts to figure out that this notice has not reached the intended target. Is that right? Yes, exactly. And as I understand it, the district court did not address these issues because it declined to consider Jones as, well, I guess what I would say is the district court did not consider the Jones factors in determining whether there was a reasonable notice here, did it? It did not. So we would be, I guess, treading on an area that the district court hasn't done in the first instance itself. That's right. The district court did not address Jones. But it's clear that Jones is controlling and that the facts in Jones What case shows that Jones is controlling in the immigration context? There is a Ninth Circuit case that discussed Jones. Yeah. And, you know, I think it is I mean, I think it's fair to say that you're asking us to extend Jones to the immigration context, at least the portion of Jones that requires something more. Would you agree with that, that there's been no Ninth Circuit case that has extended the Jones is something more requirement to the immigration context? Yes. And but I wouldn't necessarily call it an extension. Jones is pretty clear on stating, you know, this is what due process has always required. But I mean, due process is different in the immigration context. I mean, there's many cases that have said that. But here, what really is underlying the reasoning in Jones is that when there's an important interest at stake in Jones, it was a property interest here. We're talking about someone being removed from the country. And when those important interests are at stake and the government learns that its notice is unsuccessful, it has to do something more. It seems like it's black letter law that, you know, the in the immigration context, the government can do something to due process. Rights of an immigrant is not the same as someone that's lawfully in the United States. So why should we extend Jones to this context? Even someone who is not a lawful citizen has due process, right? Correct. But it's not the same as every other citizen. I mean, Denmore says that. There's many cases that say that. And here, when someone has an opportunity to appear before a judge and make their case and have their day in court for why they should be able to remain in the country, that is a crucial and life-altering moment. And they are due notice of that hearing. Do you have any other questions? I did. Go ahead. Are you familiar with Williams v. Mukasey? I am not. That is one of our cases in an immigration context in which our court applied Jones and said that the Jones framework, the analytical due process framework, applies in the context of a motion to reopen that was denied by the Board of Immigration Appeals. So I'm wondering why that and other cases seem to suggest that Jones is applied in a variety of governmental contexts. Why wouldn't that apply in this context as well? And I agree. And Jones even draws on other examples. I believe it draws on examples of What's at the heart of Jones, the reasoning that's at the heart of Jones, applies in immigration just as it would in a civil or property matter. That when someone has such an important interest at stake, the government has to do something more when they learn that the notice that they sent was not reasonably calculated to reach the person or that it was unsuccessful. Okay, thank you. Thank you. We'll give some more time on rebuttal. Thank you. Good morning. May it please the Court. Sarah Barr appearing on behalf of the United States. A hearing notice is reasonably calculated to reach the alien when the immigration court sends it to the address that the alien gave on the order to show cause. That is, well-settled law in this circuit since Farhood. In this case, I think we need to clarify the facts. The defendant personally was told and received in writing that he was now in deportation proceedings. He was read and given the order to show cause that told him, you will be receiving important mail about these proceedings. You need to give us an address. That mail will only be sent to the address you give us. And you need to keep that address updated with the immigration court. Ms. Barr, do you mind if I interrupt for a second? Yes. That very argument was rejected in Jones v. Flowers as well. It was not, Your Honor. I disagree. I think the critical difference in Flowers is that Jones never received initial notice that he was in any type of proceeding. It was that initial notice that was returned as unclaimed. And so the State knew he never had notice at all. In the case here, he had notice. He knew exactly what was happening. He knew he was in deportation proceedings. He knew he was going to receive further mail. He knew the consequences of his failure to abide by his responsibilities on that— But can I push back for a second? In Jones, at the tax delinquency case, and a person presumably has knowledge that if you don't pay your property taxes, some adverse consequence might result. I still think the Supreme Court essentially said even if a person has their own ongoing obligation to update their address, that doesn't relieve the government of its due process obligations to make sure that notice is reasonably calculated when they are aware that notice is not being received. I think what makes this case different and what makes Jones very specific is that, yes, you are right. Jones had a general knowledge or a general statutory obligation to keep the State updated of his record. And he knew about that 30 years before this proceeding started, when he gave the State his address through his mortgage. This case is different. He was told of a specific proceeding, a legal process that had begun against him. And he was told exactly what the process was and what the consequences of his failure to appear would be, and that in order to make sure that he appeared, he had to make sure that his address was updated. And I'd also like to clarify another factual issue here, because Jones involved the government. It was just the government. It was just the State. And in immigration proceedings, what we had here was we had the government file the order to show cause with the court. And the government mailed a copy of that order to show cause by regular mail to the defendant. That was returned. The court then separately, just a couple of days later, filed or, excuse me, sent by certified mail a hearing notice. So it is not established in the record that the court knew that the notice sent by the government had been returned. It was just a few days later. Don't these seem arguments better addressed to the district court on remand if the court didn't consider that any additional steps would be needed? Wouldn't it be better to have the district court address that in the first instance to see this is distinguishable from Jones and these particular facts, as opposed to us deciding that now or other collateral issues that have not been addressed by the district court itself? I don't think so. And I'll tell you why. And I'll cite a case, Hinojosa. It's a case that's cited in our briefs, and it is a circuit court case. This is a de novo review. So the court can decide the issue on any basis supported by the record. And the record here supports affirming the district court's denial of the motion to dismiss on the due process issue, on the exhaustion of administrative remedies issue, on the deprivation of judicial review issue, and on prejudice. So there's no real reason to return it back to the district court when this court can decide on de novo any of those issues. And all of those issues have been fully briefed. And Hinojosa was a case in which the district court decided only the due process issue. It did not decide the exhaustion issue, and it did not decide the deprivation issue. But this court ruled on both the due process and the exhaustion and the deprivation issue. And it was — it ruled de novo and found no — found no reason to return it on remand. Kagan. Do you agree that Jones' proposition of the something more applies in the immigration context? Or has the Ninth Circuit ever applied that specific provision of Jones in the immigration context? I'm not aware of this circuit ever applying it in the immigration context, aside from the Rendon case, which was cited in defendant's brief. That was an unpublished decision that didn't involve the deportation context. It involved the immigration benefits context. And that had an interesting fact that was different from this case, where the defendant had actually provided a different address to the government. So the government knew that there could be a different address and then sent it to the address. Ms. Barr, let me — I'm sorry to interrupt, but have you — have you read Williams v. Mukasey? That seems to be — it's a Ninth Circuit decision that seems more on point in regard to applying Jones in an immigration context proceeding. I'm not sure that I'm familiar with that case. I think, to finish your question, what I would say is, Jones is a Supreme Court case. So the general premise absolutely applies in the immigration context. But it applies in the circumstances in which the holding arose. And those circumstances are when the government knows that the person who is being placed into a proceeding has no notice that they were placed into that proceeding, then the additional steps are required. I don't know — why do you concede that so readily? I mean, the Supreme Court has also said the due process regime is different in the immigration context, that, you know, you could do to unlawful immigrants what you couldn't do to citizens or people lawfully in the United States from a due process perspective. I think that's absolutely true. But I think even if you look at it from the higher perspective, what due process boils down to is receiving an opportunity to be heard. And this defendant had an opportunity to be heard. That's what it's all about. He was told in person and in writing that he was now in deportation proceedings. These are the rights you have in deportation proceedings. These are the responsibilities you have. You have to keep the court updated. You're going to receive mail from the court. They have to know. If you fail to appear, you will be ordered deported in absentia. Oh, and by the way, if you are, here's how you can fix it. You can file a motion to reopen, and that motion could very well be based on your failure to receive the hearing notice. He was told all of this. So this is not a due process issue. This is a failure to pursue diligently the rights that he knew that he had in order to have the opportunity that he was told that he had. I was going to ask. So I'm wrestling with this notion that because he was given that notice, that has it be that he had, I guess, are you saying that there's an additional obligation or an additional awareness that he has to update the address as different from Jones? Is that the basis for the distinction that you're making? Well, the OSC specifically tells him that he has to keep the court apprised of his address. So just weeks before the court sent the notice of hearing to the very address that he provided, he was told you have to provide an address for the court for this specific hearing. So I guess, as I understand it, your sense is you're accepting that Jones, as a Supreme Court authority, would apply in the context of immigration proceedings as well, since it's a government action. But in this particular context, there's a distinction because of what type of notice he specifically received before that mail went out. Yes. Okay. And let me ask you, so if we accept the proposition that Jones applies in this context, I'd like to pose the question I asked to your friend, which is to say, what else could the government have done here to notify this gentleman of this hearing, given that he apparently took off? I don't believe they could have done anything, because regular mail was sent to his address, certified mail was sent to his address. There was no other way to know where he was. And Jones reminds us that we have to consider what is reasonably calculated in the totality of the circumstances. What we have here is a defendant who had just been caught committing immigration fraud. He had only been in the United States for about a year. He had no U.S. citizen or family member ties or humanitarian concerns here. There's no reason to believe that he didn't do something other than flee. Then evade. Okay. And then to clarify something you said earlier, so you're saying that the record doesn't show that the immigration judge knew that the initial regular mail notice of the motion, right, and the copy of the OSC that was mailed to him and then returned because it couldn't be forwarded to another address. He was apparently no longer there. But the immigration judge did not know of that fact that it was returned. The record just doesn't speak to that. That is not in the record. It would be the defendant's burden to establish the collateral attack, and the defendant has not provided a transcript of that hearing or any other evidence to indicate that the court knew that the mailing filed by the government had been returned. And Ms. Bard, does the record disclose anything about when he might, if he left, when he left or anything related to that? It does not. And again, Hinojosa speaks to that, that it is the defendant's burden to provide some sort of explanation other than his own lack of diligence why the mail would not have been received there. Thank you, counsel. Thank you, Your Honors. We'll give you two minutes. Thank you very much. And I want to dovetail on some important facts that appears are crucial in the government's argument. When Mr. Rivera-Valdez appeared at the INS office in Portland and was presented with the order to show cause, we're talking about a six-page document. And on the backsides of the initial page where it sets forth the reasons why he has been determined to be potentially removable, but on the backsides, we have about 10 paragraphs in size 11 font that talk about additional consequences and responsibilities. That packet of information, Mr. Rivera-Valdez's signature only appears on the final page. Ms. Hinojosa, can you speak more directly to the point that counsel is making that this, that that fact pattern makes this different from Jones in the sense that here, Mr. Rivera-Valdez was given something more specific information about his life than Jones did? You know, I do think that Jones and Mr. Rivera-Valdez's situations are similar in that in Jones, an individual knows they have to pay their taxes and they generally know about the government being able to come in and seize their property if they're not up to date on their taxes. And the court in Jones rejected that, that knowledge does not impugn on the person an additional responsibility when we're talking about has due process been met. And here it's the same. We don't look to Mr. Rivera-Valdez's underlying motivations or the fact that he was presented with this order to show cause first. According to your colleague, Jones, it was like 30 years ago that he received that financial notice. So I believe Jones had been paying on the mortgage for 30 years or had owned the home for 30 years. And the responsibility was on his, his mortgage holder to pay those taxes. But two letters were sent to Mr. Jones and both were left unclaimed. And it wasn't, you know, and here for Mr. Rivera-Valdez, the fact that he was present at the office, it still doesn't go to the government's responsibility. And that's key in Jones. What's the government's responsibility and did they do something more? Thank you, counsel. Thank you. This case will be submitted.
judges: BUMATAY, SANCHEZ, Baker